In re Robert Michael WHITE and Joan Stapleton White, Debtors.

No. 6:09–bk–10723–ABB.

United States Bankruptcy Court, M.D. Florida, Orlando Division.

June 22, 2010.

242

Eric A. Lanigan, The Lanigan Firm PA, Winter Park, FL, for Debtors.

### *ORDER*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on the Amended Objection to Debtors' Claim of Exemptions and the Motion for Turnover of Property of the Estate (Doc. Nos. 19, 36) filed by the Chapter 7 Trustee Carla P. Musselman ("Trustee") against the Debtors Robert Michael White ("Mr. White") and Joan Stapleton White ("Mrs. White"). Evidentiary hearings were held on February 22 and April 19, 2010 at which the Debtors, the Trustee, and the parties' respective counsel appeared. The parties were granted leave to file post-hearing briefs, but neither party filed a post-hearing brief.

An Order was issued on May 12, 2010 (Doc. No. 50) directing the Trustee to file a statement delineating the specific relief she seeks and directing the Debtors to file a response thereto. Both parties timely complied with the May 12, 2010 Order (*see* Doc. Nos. 52, 53). The Trustee's objections are due to be sustained for the reasons set forth herein.

### *Background*

The Debtors filed this case on July 24, 2009 ("Petition Date"). Mr. White has been self-employed for more than fifteen years as a jewelry wholesaler and retailer and conducts his business through the sole proprietorships Goldstream, Ltd. and TouchStone Jewelers. He attends jewelry shows throughout the Southeast selling jewelry, knives, coins, and guns. Most sales are outright sales and some are on a consignment basis. Mr. White's business cards set forth he has forty-five years of experience in the jewelry and antiques business.[1] Mrs. White has been employed by the Seminole County Public Schools for ten years and is not involved in Mr. White's business.

The Debtors listed in Schedule B personal property owned on the Petition Date valued at $19,926.31, which includes:

(i) SunTrust business checking account (joint) valued at $31.57.

(ii) Wachovia checking account (joint) valued at $27.04.

(iii) Wachovia business checking account (joint) valued at $164.30.

(iv) Wachovia savings account (joint) valued at $103.40.

(v) Wachovia savings account (Mrs. White) valued at $50.00.

(vi) Household furnishings and apparel (joint) valued at $1,575.00.

(vii) Jewelry (Mrs. White) valued at $300.00.

(viii) Firearms (Mr. White) valued at $475.00.

(ix) Business inventory (jewelry) (Mr. White) valued at $3,000.00.

(x) 1999 Ford Expedition (joint) valued at $2,500.00.

The Debtors claim these assets as fully exempt in Schedule C. They claim the SunTrust and Wachovia business checking accounts and the Wachovia personal checking account as exempt pursuant to Fla. Stat. Section 222.11. They claim the two Wachovia savings accounts, household fur-

---

1. Trustee's Ex. 10.

nishings and apparel, jewelry, firearms, and business inventory as fully exempt pursuant to the statutory personal property exemption of Fla. Stat. Section 222.25(4). They claim the Ford Expedition as fully exempt pursuant to Fla. Stat. Sections 222.25(1) (in the amount of $2,000.00) and 222.25(4) (in the amount of $500.00).

### Trustee's Pleadings and Adversary Proceeding

█ The Trustee filed an Objection to the Debtors' exemptions asserting:

1. The Debtors are not entitled to the $2,000.00 personal property exemption of Fla. Stat. Section 222.25(4) because they are receiving the benefit of the Florida homestead exemption.

2. The valuation of the Wachovia Savings Accounts, jewelry, firearms, and business inventory exceed the allowable exemption amounts.

3. The Wachovia account balances listed in Schedules B and C are inaccurate as of the Petition Date.

4. The Debtors are sole proprietors and are ineligible to claim wage exemptions pursuant to Fla. Stat. Section 222.11.

5. The Debtors are not entitled to the $2,000.00 Fla. Stat. Section 222.25(1) exemption claim in the Ford Expedition, but are only entitled to an exemption of $1,000.00 pursuant to Fla. Stat. Section 222.25(1) because the vehicle is titled in Mr. White's name only.

The Trustee requests disallowance of the objectionable exemptions and a determination of the value of the Debtors' personal property as of the Petition Date. She must establish by a preponderance of the evidence the claims of exemption are invalid. FED. R. BANKR.P. 4003(c); *In re Mohammed*, 376 B.R. 38, 41 (Bankr.S.D.Fla. 2007).

The Trustee filed a Motion for Turnover setting forth Mr. White repeatedly failed to turn over business records to the Trustee including vendor files, inventories, credit card statements, PayPal account information, and bank records and would not grant her access to his computer upon which his business records are maintained. The Trustee requests the Debtors be directed to turn over the requested records and to grant her access to their computer.

The Office of the United States Trustee filed a multi-count Complaint against Mr. White seeking denial of his discharge pursuant to 11 U.S.C. Section 727(a) on the basis Mr. White failed to disclose in his Schedules and Statement of Financial Affairs all of his jewelry and business inventory and concealed such items.[2] Mr. White did not respond to the Complaint and a Final Judgment was entered on February 25, 2010 in favor of the United States Trustee and against Mr. White denying his discharge.

The issues raised by the Trustee in her pleadings are the same issues that form the basis of the Adversary Proceeding. The nucleus of these matters is Mr. White's failure to account for and disclose his business inventory. Mr. White did not participate in the Adversary Proceeding, which resulted in the loss of his discharge, but has vigorously opposed the Trustee's exemption objections and turnover motion. No allegations of wrongdoing have been made against Mrs. White by the Trustee or the United States Trustee.

The Debtors filed this case jointly pursuant to 11 U.S.C. Section 302(a) and their estates are being administered as a consol-

---

**2.** *Donald F. Walton, UST v. Robert Michael*      *White,* AP No. 6:09–ap–00954–ABB.

idated estate. 11 U.S.C. § 302(b); Local Rule 1015–1. The Debtors' assets, individually and jointly owned, became property of the estate on the Petition Date pursuant to 11 U.S.C. Section 541(a). The Debtors have elected the same claims of exemption in Schedule C pursuant to 11 U.S.C. Section 522(b)(3). The results of this proceeding are binding on the Debtors.

### Evidentiary Hearings on Trustee's Pleadings

The Trustee's foundational evidence is photographs of items offered for sale by Mr. White at pre-petition and post-petition jewelry shows. The post-petition photographs show several unique items of jewelry that appear in the pre-petition photographs, but were not disclosed or accounted for in the Debtors' bankruptcy papers.

Esther Shuler took photographs of the contents of the Debtor's glass display cases at a jewelry show on May 1, 2009. Mr. White and Bill Shuler, Esther Shuler's husband, had extensive business dealings over the years pursuant to which Mr. White regularly purchased inventory from Mr. Shuler. The photographs taken by Mrs. Shuler show numerous items of jewelry and coins offered for sale by Mr. White in his display cabinets.[3] Much of the inventory had been acquired by Mr. White from Mr. Shuler.

An agent of the Trustee attended a jewelry show post-petition on November 7, 2009 and photographed the contents of Mr. White's display cases.[4] The contents include several items of jewelry, knives, silverware, and silver serving dishes. Various unique items of jewelry appearing in the November 7, 2009 photographs, includ-

ing a brooch, earrings, and bracelet, appear in the May 1, 2009 photographs.[5]

The Trustee attended a jewelry show on November 21, 2009 and videotaped Mr. White's display cases.[6] Mr. White was offering for sale numerous items of jewelry, watches, swords, and ammunition boxes. One item of jewelry had a sales price of $19,000.00. The Trustee attempted to conduct an inventory of the Debtors' home, but could not complete the inventory because most of the Debtors' belongings were in boxes in the garage in preparation for a move.

Mr. White, when examined at his 11 U.S.C. Section 341 meeting of creditors about the whereabouts of the inventory photographed on May 1, 2009, testified he had sold all of the jewelry acquired from Mr. Shuler. Mr. White admitted at his Rule 2004 examination on November 30, 2009 that he still had possession of some of the unique pieces of jewelry contained in the pre-petition photographs.

Mr. White produced as his sole business records:

(i) three hand-written invoices of purchases from Mr. Shuler in 2008, which do not list individual items purchased, but list the purchases as lots;

(ii) a one-page hand-written profit and loss statement for January through June 2009; and

(iii) a one-page hand-written document entitled "Business Inventory 7/23/09" listing ten items having a total value of $3,000.00, which appear to be the items he included in

---

3. Trustee's Ex. 10.

4. Trustee's Ex. 11.

5. Trustee's Ex. 10, 11.

6. Trustee's Ex. 14.

Schedule B as "business inventory."[7]

Mr. White produced to the Trustee an undated photograph of ten items of jewelry which he asserts constituted his complete inventory on the Petition Date.[8] The items appear to be the same items listed in his "Business Inventory 7/23/09."

The Trustee presented her case at the February 22, 2010 evidentiary hearing. The Court continued the evidentiary hearing to April 19, 2010 to provide the Debtor an opportunity to meet with the Trustee and resolve the inventory disclosure issues by producing a complete and accurate inventory. Mr. White did not make any meaningful attempt to resolve the disclosure and turnover issues with the Trustee.

Mr. White presented his defense to the Trustee's motions on April 19, 2010. He asserted regarding the items appearing in the pre- and post-petition photographs: (i) he did not own all of the items, but did not identify who owns each item; (ii) some of the items were on loan, but did not identify from whom they were on loan; (iii) some of the items were owned by his unidentified business partner and they mixed their inventory; and (iv) some were held on consignment, but did not identify which pieces were held on consignment.

The Trustee and the Court examined Mr. White regarding his business records and inventory tracking at the April 19, 2010 evidentiary hearing. Mr. White asserted he does not maintain business records and does inventory "by sight." He calculates his taxes "by memory." He could not delineate what inventory he had on the Petition Date, his current inventory, his annual income and expenses, or the information used in preparing the Debtors'

2007 and 2008 and Federal income tax returns.

Mr. White's testimony was not credible. It is implausible he maintains no records of his business transactions and a running inventory. He maintains two business checking accounts through which he deposits income and pays expenses. There are monthly account statements, cancelled checks, and deposit slips relating to these accounts. The MasterCard and Visa emblems on his display cabinets indicate he accepts payment by credit card. There are monthly statements and transactional records relating to his vendor credit card accounts.

The Debtors' 2007 Federal income tax return reflects gross business income of $1,104,623.00, cost of goods sold of $1,055,123.00, and inventory of $79,045.00.[9] Their 2008 Federal income tax return reflects gross business income of $977,430.00, cost of goods sold of $1,027,466.00, and inventory of $34,652.00.[10] The returns were prepared by Mr. White. Mr. White's testimony he prepared the returns from memory without records is not credible.

Mr. White had not been candid with the Court and he was directed to present an accurate inventory of his business assets as of the Petition Date. Mr. White has not presented an inventory nor has he amended the Debtors' Schedules or Statements.

The Debtors presented no substantiation for their asset valuations contained in Schedules B and C. The Debtors' bank account records reflect they undervalued their Wachovia checking accounts. They listed the following balances as of the Petition Date: (i) $164.30 for the Wachovia business checking account titled in the

---

7. Trustee's Ex. 6, 7.

8. Trustee's Ex. 9.

9. Trustee's Ex. 3.

10. Trustee's Ex. 2.

names of "Touchstone" and "Robert Michael White, Proprietor"; (ii) $103.40 for the Wachovia personal checking account titled "Joan S White" and "Robert Michael White" [11]; and (iii) $50.00 for the Wachovia savings account # 015301.

The bank account statements for these accounts set forth: (i) the Wachovia business checking account had a balance of $1,419.30 on the Petition Date; (ii) the Wachovia personal checking account had an ending balance of $1,988.07 on August 6, 2009; and (iii) the Wachovia savings account (WAY2SAVE) had a balance of 129.81 on August 6, 2009 [12] The consolidated account statement for the personal checking and savings accounts does not set forth a running daily or weekly balance; it only contains the August 6, 2009 ending balances of $1,988.07 and $129.81.

### Conclusion

 Mr. White has failed to fulfill the most fundamental and important obligations imposed upon debtors—full disclosure and truthfulness. He has not been forthright with the Trustee, his creditors, or the Court. He failed to truthfully and completely disclose in his bankruptcy papers his business inventory and business transactions. He has not cooperated with the Trustee. He has been afforded numerous opportunities to present a complete and accurate inventory, but has repeatedly failed to do so.

Mr. White has acted in bad faith. Pursuant to this Court's statutory and inherent powers to enforce the provisions of the Bankruptcy Code: (i) the Trustee's objections to exemptions are due to be sustained; (ii) the claimed exemptions are due to be disallowed in their entirety; and (iii) the Trustee's Motion for Turnover is due

to be granted. 11 U.S.C. § 105(a); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Hecker v. Kokomo Spring Co. (In re Hecker),* 264 Fed.Appx. 786, 791 (11th Cir.2008).

Accordingly, it is

**ORDERED, ADJUDGED and DE-CREED** that the Trustee's objections to exemptions (Doc. No. 19) are hereby **SUSTAINED** and her Motion for Turnover (Doc. No. 36) is hereby **GRANTED;** and it is further

**ORDERED, ADJUDGED and DE-CREED** that the Debtors' claims of exemptions in the following assets are hereby **DISALLOWED** in their entirety and the assets constitute non-exempt property of the estate: (i) SunTrust business checking account; (ii) all listed Wachovia checking and savings accounts; (iii) household furniture and furnishings; (iv) men's and women's apparel; (v) jewelry; (vi) firearms; (vii) business inventory; and (viii) the Ford Expedition; and it is further

**ORDERED, ADJUDGED and DE-CREED** that the Debtors are hereby directed to turn over such non-exempt property to the Trustee forthwith including the amount of $31.57 for the SunTrust account and the amount of $3,564.22 representing the total balance of the Wachovia accounts on the Petition Date; and it is further

**ORDERED, ADJUDGED and DE-CREED** that the Court hereby retains jurisdiction to enforce the provisions of this Order and to assess whether the imposition of additional sanctions may be appropriate.

---

**11.** The Debtors erroneously listed this account as a savings account in their Schedules; it is a personal checking account titled jointly in the Debtors' names.

**12.** Trustee's Ex. 4, 5.